# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Oct 29, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Timing Advance "True Call" / LoCDBoR area search for all records and )
unique device/user identifiers pertaining to Timing Advance / LoCDBoR )
location information during the dates, times and geographical boundaries )
listed in Attachment A. )

Case No. 24 MJ 238

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. § 924(c) | Use, Carrying, and Brandishing of a Firearm during a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Kevin Kaiser
Digitally signed by Kevin Kaiser
Date: 2024.10.28 10:20:14 -05'00'

*Applicant's signature*

Kevin Kaiser, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date: 10/29/2024

*Judge's signature*

City and state: Milwaukee, WI     Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Kevin Kaiser, being first duly sworn on oath, on information, and belief state:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular networks that are in the possession, custody, and/or control of T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054; US Cellular, a cellular service provider headquartered at 8410 W. Bryn Mawr Avenue, Chicago, IL; and AT&T, a cellular service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile/US Cellular/AT&T to disclose to the government copies of the information further described in Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April of 2023. Since April of 2023, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, as defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. This affidavit is based on my training, experience, personal knowledge, and observations in this investigation; upon my discussions with other law enforcement officers and agents involved in this investigation; and, upon my review of official reports submitted in relation to this investigation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that on or about October 9, 2024, in the Eastern District of Wisconsin, violations of Title 18, United States Code, Section 1951(a) (Hobbs Act Robbery), and Title 18, United States Code, Section 924(c) (Use, Carrying, and Brandishing of a Firearm during a Crime of Violence) have been committed by at least one unknown actor. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. Affiant knows that on Wednesday, October 9, 2024, at approximately 3:44 AM, Milwaukee Police Department (MPD) police officers were dispatched to an Armed Robbery at 9040 W. Silver Spring Drive, located in the City and County of Milwaukee, and the state and eastern district of Wisconsin. Officers and detectives from MPD responded to the incident.

7. The victims, identified as A.S. and S.K., are the owners of King Chicken and Burger located at 9040 W. Silver Spring Drive.

8. A.S. stated that after he and S.K. closed and cleaned up their business, they exited the business and entered their vehicle which was parked in the parking lot of their business. A.S.

stated that an unknown subject emerged from the alley behind the business (directly to the east.) A.S. advised that as the subject was approaching the vehicle, the subject fell to the ground and got back up.

9. A.S. advised that the subject walked up to A.S.'s vehicle and pointed a gun at him. The subject then opened the driver's door to A.S.'s vehicle. A.S. advised that the subject pointed the firearm directly at his head and yelled, "Gimme your wallet!"

10. A.S. told the subject that he did not have a wallet, so S.K. proceeded to hand the subject her black Adidas backpack which contained her wallet. After the subject took the backpack, the subject walked back to the alley from where he initially came and ran north.

11. S.K. advised there were several of her credit/debit cards and approximately $832 that the subject took. S.K. stated $600 of the money taken during the armed robbery came from proceeds of the business and $232 was S.K.'s personal money.

12. The subject was described as a black male, 40-50 years old, slim build, 5'7"-5'8", dark complexion, yellow eyes, wearing a black and brown mask, blue jeans, white shoes, and armed with a black handgun.

13. MPD Detective Shipman recovered video from 5626 N. 91st Street. The video shows on October 9, 2024, at 3:30:00 a car drives southbound on N. 90th Street and stops at the intersection of N. 90th Street and W. Thurston Avenue. The subject then walks from off camera where the car stopped and crosses the street to the south side of W. Thurston Avenue. The car then drives eastbound from W. Thurston Avenue. The car appears to be a light-colored mid-sized, 4-door sedan. The sedan then turns southbound on N. 89th Street and drives off camera. The subject walks eastbound on the sidewalk and enters the eastside gangway of 9015 W. Thurston Avenue. At 3:31:08 the subject emerges from behind the blue conversion van parked behind 9015 W.

Thurston Avenue. The subject continues walking south along the east side of 9040 W. Silver Spring Drive out of view of the camera. At 3:31:57 the subject emerges from behind the east side of 9040 W. Silver Spring Drive walking away from the robbery going back the way he came. He walks out of camera view behind the blue conversion van. The recovered video was approximately 6 minutes behind actual time.

14. S.K. reported that one of her cards was used at Best Buy Liquor located at 4426 W. Capitol Drive on October 9, 2024, at 11:47 AM, for $37.91. West Allis Detective Caleb Porter of the FBI Milwaukee Violent Crimes Task Force (MAVCTF) went to the location to investigate. Detective Porter observed surveillance footage which showed that the subject arrived and fled in a gold Buick Park Avenue, which was parked directly in front the business. A white female wearing a black jacket was observed on surveillance video at the approximate time of the transaction with the victim's (S.K.) stolen credit card. Detective Porter observed a Milwaukee County Transit System (MCTS) Bus passed the suspect vehicle as the subject was entering the vehicle.

15. Milwaukee County District Attorney Investigator Steven Strasser of the MAVCTF contacted MCTS and was able to obtain the MCTS surveillance footage video. At 11:48:11 AM, on October 9, 2024, the MCTS footage shows a white female wearing a black jacket entering a gold 1999 Buick Park Avenue with Wisconsin registration plate AVV6340. The white female is the same subject who was observed using the stolen credit card at the liquor store.

16. Affiant knows the vehicle plate AVV6340 was listed to a Gold, Buick, Park Avenue, 4 Door, VIN 1G4CW52K6X4642860, with the registered owner Kenneth R. HUNTER (B/M XX-XX-60) of XXXX N. 39th Street. HUNTER is currently on Parole for Armed Robbery.

HUNTER, per the Department of Corrections, is 5'9" and 190lbs, which matches the description of the actor in this offense.

17. The gold Buick Park Avenue matches the suspect vehicle that is observed stopping near the scene of the robbery of King Chicken and Burger, letting the subject out of the vehicle.

18. Investigators checked the Flock camera system using the WI registration plate of AVV6340 and the gold Buick Park Avenue is Flocked at N. 91st Street. and W. Silver Spring Drive just after the robbery at 3:39 AM on October 9, 2024.

19. The victim (S.K.) reported that another one of her cards was used at Walgreens located at 5115 W. Capitol Drive at 11:55 AM, on October 9, 2024, for $299.54. The same white female subject wearing the same black jacket observed at the Best Buy Liquor store and seen on the MCTS bus video earlier on 10/09/2024, was observed on video surveillance at the front counter at the approximate time the victim's card was used.

20. The victim (S.K.) also reported $300 was withdrawn from her bank account at approximately 1:04 PM on October 9, 2024, at the Wells Fargo Bank, located at 2675 N. Mayfair Road. A money order was also issued from S.K.'s account at the Wells Fargo Bank. The same female subject from the Best Buy Liquor store, MCTS bus video, and Walgreens was observed on video surveillance at Wells Fargo at the time S.K. reported the fraudulent activities took place with her account.

21. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

22. In my training and experience, I have learned that T-Mobile/US Cellular/AT&T are companies that provides cellular communications service to a significant percentage of the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers such as T-Mobile/US Cellular/AT&T also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's estimated distance from a particular cell tower and T-Mobile/US Cellular/AT&T's network derived location of the device in latitude and longitude.

23. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

24. Based on my training and experience, I know that cellular providers, such as T-Mobile/US Cellular/AT&T, routinely and in their regular course of business maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e. the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as phone call or text message).

25. Furthermore, cellular providers such as T-Mobile/US Cellular/AT&T in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device'); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the estimated distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, also known as True Call, that is captured and controlled by T-Mobile/US Cellular/AT&T.

26. Based on my training and experience and the above facts, information obtained from cellular service providers, such as T-Mobile/US Cellular/AT&T, reveal cell towers (and,

7

where applicable, sectors) that were used and the estimated location information (the estimated distance from the tower and sector and estimated latitude and longitude) of a given cellular device engaged in a particular communication or interaction with the cellular network can be used to show that the device was in the general vicinity of the cell tower or an estimated location at the time the communication or network interaction occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

a. Location #1: 9040 W. Silver Spring Dr., Milwaukee, WI on October 09, 2024, from approximately 3:20 AM – 3:50 AM (CST)

b. Location #2: Intersection of N. Sherman/W. Hampton, Milwaukee, WI, on October 09, 2024, from approximately 3:45 AM – 3:55 AM (CST)

c. Location #3: Intersection of N. Sherman/W. Capitol Dr., Milwaukee, WI on October 09, 2024, from approximately 4:27 AM – 4:37 AM (CST)

d. Location #4: 4426 W. Capitol Dr., Milwaukee, WI on October 09, 2024, from approximately 11:30 AM – 12:00 PM (CST)

e. Location #5: 5115 W. Capitol Dr., Milwaukee, WI on October 09, 2024, from approximately 11:45 AM – 12:15 PM (CST)

f. Location #6: 2675 N. Mayfair Rd., Wauwatosa, WI on October 09, 2024, from approximately 12:50 PM – 1:20 PM (CST)

27. Your affiant believes that obtaining the requested evidence of which cell phones were present at both of the above-mentioned locations will be valuable in this investigation and assist investigators in attributing any subjects located inside the identified vehicle to the armed robbery.

28. Therefore, probable cause exists to believe that the records requested contain evidence related to identifying the telephone number(s) associated to these incidents, involved in the crimes that occurred on October 09, 2024, in violation of Title 18, United States Code, Section

1951(a) (Hobbs Act Robbery), and Title 18, United States Coe, Section 924(c) (Use, Carrying, and Brandishing of a Firearm during a Crime of Violence).

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

30. I further request that the Court direct T-Mobile/US Cellular/AT&T to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile/US Cellular/AT&T, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

9

## ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance "True Call" / LoCDBoR area search for all records and unique device/user identifiers pertaining to Timing Advance / LoCDBoR location information during the following listed dates, times and geographical boundaries (T-Mobile & US Cellular to search **0.35 Miles** and AT&T to search **0.60 Miles** based on parameters below):

### Location #1

GPS Coordinates: 43.102002, -88.02543

Date: October 09, 2024                        Time: 3:15 AM – 3:45 AM (CST)

### Location #2

GPS Coordinates: 43.10201408, -87.96686756

Date: October 09, 2024                        Time: 3:45 AM – 3:55 AM (CST)

### Location #3

GPS Coordinates: 43.0902669, -87.96707837

Date: October 09, 2024                        Time: 4:27 AM – 4:37 AM (CST)

### Location #4

GPS Coordinates: 43.09018, -87.96941

Date: October 09, 2024                        Time: 11:30 AM – 12:00 PM (CST)

### Location #5

GPS Coordinates: 43.08976, -87.97796

Date: October 09, 2024                        Time: 11:45 AM – 12:15 PM (CST)

### Location #6

GPS Coordinates: 43.06718, -88.04853

Date: October 09, 2024                        Time: 12:50 PM – 1:20 PM (CST)

# ATTACHMENT B

### Items and Information to be seized and searched

All information that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 924(c) committed on October 9, 2024, involving multiple unknown individuals, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

    a. The unique identifiers for each wireless device that generated a Timing Advance "true call" record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

    b. The starting and ending date/time of the connection along with the duration;

    c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

    d. The service type for the communication; and;

    e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance "True Call" records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the

11

timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

3. It is anticipated that identifying information will be requested for devices whose characteristics meet any of the following criteria:

    a. Devices whose cellular network records; including distance from the tower and/or network derived latitude and longitude; are consistent with the facts of the investigation and/or would not solely reflect a device passing through.

4. However, it is noted that no subscriber information outside the initial search criteria is authorized by this warrant and additional legal process will be submitted.